**Daniel Snyder, OSB No. 783856**
danielsnyder@civilrightsoregon.com
**Paul Bastian, OSB No. 062706**
paulbastian@civilrightsoregon.com
**Snyder, Post and Burgess**
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
Telephone: (503) 241-3617
Facsimile: (503) 241-2249
　　　　Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

### EUGENE DIVISION

| | |
|---|---|
| **LAUREN HAY,** | Case No. 6:24-cv-01642 |
| Plaintiff, | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| v. | |
| **A CARING DOCTOR, P.C. dba BANFIELD PET HOSPITAL** | **(TITLE VII; TITLE I OF THE ADA; SUPPLEMENTAL CLAIMS)** |
| Defendant. | |

## I. **PRELIMINARY STATEMENT**

1.　　　Plaintiff brings this action to remedy violations of Plaintiff's statutory rights

under FMLA - 29 U.S.C. § 2601 *et seq.*; Title VII, Gender; Title I of the ADA, 42 U.S.C. §

COMPLAINT AND DEMAND FOR JURY TRIAL

12112, and supplementary state claims. Plaintiff seeks equitable relief as well as attorneys' fees and costs.

## II. JURISDICTION

2.      Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331, federal question jurisdiction, and 28 U.S.C. §1343, civil rights jurisdiction.

3.      Plaintiff requests that this Court invoke its supplemental jurisdiction pursuant to 28 U.S.C. § 1367 with respect to all causes of action based on Oregon statutory provisions or common law, as the state claims arise from the same nucleus of operative facts as the federal claims.

4.      All preconditions to jurisdiction pursuant to 42 U.S.C. § 2000e-5 have been satisfied.

5.      On June 18, 2024, Plaintiff filed a verified complaint with the Oregon Bureau of Labor and Industries Civil Rights Division (BOLI CRD), Case No. EEEMSM240618-70627 alleging unlawful employment practices by Defendant based on race, sex, gender, having a disability, pregnancy, and invocation of OFLA in that Defendant subjected Plaintiff to different terms and conditions of employment, failed to engage in the interactive process for reasonable accommodations, failed to make reasonable accommodation, interfered with her request for medical leave, and discharged Plaintiff from employment.

6.      On June 18, 2025, BOLI CRD found substantial evidence of an unlawful practice based on medical leave interference.

7.      On June 18, 2025, BOLI CRD issued Plaintiff a right-to-sue letter for Case Number EEEMSM240618-70627 and EEOC No. 38D-2024-00674.

COMPLAINT AND DEMAND FOR JURY TRIAL

8.      The venue is in the District of Oregon pursuant to 28 U.S.C. § 1391(b) because the claim arose in this Judicial District.

## III. **PARTIES**

9.      Plaintiff Lauren Hay (Plaintiff) is a citizen of the United States. At all times material, Plaintiff worked for the Defendant in Deschutes County, Oregon.

10.      Defendant A Caring Doctor, P.C. (Defendant) does business as Banfield Pet Hospital. Said Defendant is an Oregon corporation registered to do business in Oregon. The Defendant does regular and sustained business throughout Oregon, including Deschutes County, where Plaintiff was employed.

11.      At all times relevant, Defendant's employees and supervisors' conduct toward Plaintiff was within the course and scope of their employment with Defendant.

## IV. **GENERAL FACTUAL ALLEGATIONS**

12.      Plaintiff is a female with a disability. She was pregnant at the time she was discharged from employment by Defendant and had sought medical leave. Plaintiff was subjected to discrimination, retaliation, and interference based on her disability, sex, gender, pregnancy, and medical leave.

13.      On January 24, 2023, Defendant, acting through Lisa Foss, Field Director of the Oregon market of A Caring Doctor, P.C., Banfield Pet Hospital, offered Plaintiff the position of Practice Manager for Defendant's Bend Banfield pet hospital location.

14.      In February 2023, Plaintiff started working for Defendant as the Practice Manager of the Bend, Oregon, location. This position is a non-exempt, salaried position which entitled Plaintiff to receive a salary, overtime pay, and fringe benefits. Plaintiff was guaranteed a 10%

COMPLAINT AND DEMAND FOR JURY TRIAL

salary increase upon completion of the Plaintiff's first year of employment.

15.     Defendant's Area Chief of Staff, Becky Hamm, DVM, oversaw all medical and veterinary concerns and hospital inspections. Both Dr. Hamm and Plaintiff managed the Bend, Oregon, location together. Plaintiff was the only Asian Practice Manager in Oregon.

16.     As a Practice Manager, Plaintiff's primary duty was to manage the day-to-day operations, finances, and associates of the Bend location. It was not Plaintiff's primary duty to assist in providing treatments or diagnostics for patients. All associates at the hospital, including Veterinary Assistants, Veterinary Technicians, and Client Service Coordinators, assisted in providing patient care and filled out medical record documentation.

17.     In May 2023, Lisa Foss resigned as the Field Director of Defendant's Oregon market. Another employee, Kiki Anderson then temporarily worked as the Interim Field Director. In May 2023, Becky Hamm, DVM, resigned as the Defendant's Area Chief of Staff and accepted a new position for a different company.

18.     On August 11, 2023, Plaintiff learned she was pregnant. In late August 2023, Plaintiff notified her direct supervisor, Kiki Anderson, the interim Field Director over the Oregon market, of her pregnancy, need for accommodations, and that she would eventually need medical leave for her pregnancy and birth of her child. Ms. Anderson provided Plaintiff with information on submitting a voluntary notification to the company regarding her pregnancy to receive a fetal radiation-monitoring badge. However, Ms. Anderson did not provide the information for her to submit for further accommodations or pregnancy leave.

19.     The interim Field Director over the Oregon market, Kiki Anderson, transitioned out of the role to Traci Delos, the new official Field Director over the Oregon market. On the

COMPLAINT AND DEMAND FOR JURY TRIAL

morning of October 6, 2023, Plaintiff emailed the Vice President of the Northwest Regional

Operations, Wendy Cordon, and the new Field Director of the Oregon market, Traci Delos,

sharing her concerns regarding the issue of trying to retain a Certified Veterinary Technician.

20.     On October 7, 2023, Plaintiff left for vacation. On October 16, 2023, Plaintiff

returned from her vacation and learned that the Certified Veterinary Technician had given her

two weeks' notice of resignation. Plaintiff had two video meetings with Traci Delos and Kristen

Deeder, DVM over Plaintiff's concerns about technician retention. During their second meeting,

Plaintiff told Traci Delos that she was approximately fifteen weeks pregnant. Plaintiff also told

Ms. Delos that she was intending to file for FMLA/OFLA and maternity leave. Traci Delos

provided no information for submitting requests for accommodations or maternity leave. Plaintiff

later learned it was Defendant's policy for supervisors to provide the information to associates

upon notification of pregnancy.

21.     In November 2023, Plaintiff updated the signature of her work email account to

include a standard notification "Expected Maternity Leave: April 14 – July 6, 2024."

22.     In December 2023, Traci Delos announced in a video meeting with the Practice

Managers of the Oregon market that the labor-revenue goals for the New Year would be

considerably higher than what was initially announced the month prior, intensifying the

minimization of labor costs even more. Traci Delos began requiring Plaintiff to continue

minimizing employee labor hours at the Bend hospital to meet labor-revenue requirements.

Plaintiff had to change the staffing schedule to balance labor and cost issues per Ms. Delos'

instructions.

23.     As Plaintiff sought to follow Delos' directives, Jenifer Carter, a veterinary

COMPLAINT AND DEMAND FOR JURY TRIAL

assistant at the hospital, simultaneously pushed back over the reduction in her work hours, while expressing her desire to have time off work on her terms and to be promoted to lead veterinary technician.

24.     On January 2, 2024, Jenifer Carter came into Plaintiff's office and was insubordinate, rescinding her prior agreement to be the associate in charge of closing the hospital on January 3, 2024. Because Carter refused to perform her duties, Plaintiff stayed to close the clinic herself.

25.     On January 6, 2024, Jenifer Carter complained to Plaintiff that she was losing some hours even though Plaintiff had been careful to minimize disruption in Carter's usual weekly schedule of thirty-six to forty scheduled hours and had scheduled those hours. Carter again became insubordinate and said that she refused to work her scheduled shift on Saturday, January 13, 2024, and demanded that Plaintiff reschedule her to work the prior Monday, January 8, 2024. Plaintiff explained that she could not change the schedule based on the guidelines given to her by Ms. Delos.

26.     On January 8, 2024, at 5:39 p.m. on January 8, 2024, Traci Delos texted all the Practice Managers of the Oregon market hospitals. Ms. Delos wrote, "I want you all to know that I understand this adjustment is challenging. We must be careful about how we communicate this to our teams. We are NOT reducing our staffing. We are appropriately scheduling for the current caseload. This is your challenge as a manager right now. Keep your teams engaged as you adjust to running an efficient team and a balanced day. Using words like reduction in hours will do the opposite and have long-term effects on a short-term problem. I know you can do this. We have to get the pets in the door. We have the veterinary doctor days. We have the team members, and we

COMPLAINT AND DEMAND FOR JURY TRIAL

need the patients to have the hours. I want you all to come to the breakfast club tomorrow with

one new idea increasing the hours/caseload. It can be anything. Let's see what we can come up

with! I want our teams in hours, so what can we do?!?"

27.     On January 8, 2024, at 6:15 p.m., Plaintiff wrote Ms. Delos ". . . I feel that

regardless of how we present these conversations to our teams, the reality is that there's only so

long that most hourly associates can go with only getting minimal hours without having to look

for secondary/other employment. "

28.     In January 2024, Plaintiff called the Field Director of the Oregon market, Traci

Delos, to discuss her concerns about the new revenue and labor requirements. Plaintiff explained

that the Bend location was the only hospital in the Oregon market that could offer same-day

patient appointments, and the hospital did not have a "lead time" since the next available

appointment was immediate, not several days or weeks later. Ms. Delos said, "It doesn't matter

because this is the new directive. So, you will need to figure it out." During this phone call, she

offered no support or ideas to help resolve any of Plaintiff's concerns.

29.     On January 10, 2024, Plaintiff learned that due to the nature of her pregnancy and

the risk to her fetus, she had limitations in assisting the Veterinarians with directly treating the

animals because she had limited physical capabilities, wanted to avoid exposing her fetus to

dangerous working conditions such as fractious animals, anesthetic sevoflurane fumes, and

radiation.

30.     On January 22, 2024, at approximately 2:15 p.m., Traci Delos made a video call

to Plaintiff. During the video call, Delos said that she had received a report that Plaintiff

supposedly administered a Rabies vaccination to an unnamed dog on or near December 15, 2023,

COMPLAINT AND DEMAND FOR JURY TRIAL

and allegedly falsified the veterinary chart to show that the supervising Doctor of Veterinary Medicine had performed a comprehensive examination when that had not occurred. Ms. Delos said that an unnamed associate had just reported this to her, and the associate had expressed to her that Plaintiff had vaccinated the animal, feeling the pressures of having to get as many pets as possible in the door because of the new revenue/labor requirements that Traci Delos and upper management were reinforcing. Traci Delos said she was "sorry" if labor shortages were a factor in Plaintiff's decision-making and poor choices. Ms. Delos also claimed that an unnamed associate claimed that Plaintiff had abused a dog on January 16, 2024. During the conversation, Plaintiff denied vaccinating a patient for rabies and denied abusing the dog. While on the call with Delos, Plaintiff could not access the complete patient chart but reviewed the portions of the file that could be viewed from her desktop, known as "Petware." The records showed that a Doctor of Veterinary Medicine had examined the patient and administered a Rabies vaccination that day. Plaintiff asked Traci Delos if she could briefly step away from her desk to review the detailed examination forms for the pet. Ms. Delos directed, "Stop looking at the computer charts," and instructed Plaintiff not to look at any other records for the pet. Ms. Delos said that neither of the reported issues would be documented in the veterinary records. Plaintiff told Ms. Delos that she would not have performed a rabies vaccine on her own, had not knowingly falsified any veterinary records, and reiterated that she had not abused an animal. Ms. Delos placed Plaintiff on immediate suspension and directed Plaintiff to vacate the premises. Delos warned Plaintiff not to discuss the situation or suspension with any hospital associates under threat, saying that doing so "would be immediate grounds for termination for retaliation against reporting associates."

COMPLAINT AND DEMAND FOR JURY TRIAL

31.    On January 22, 2024, at 3:57 p.m., Traci Delos called Plaintiff, directing Plaintiff to write a "recap" of their video meeting. Delos said she needed it for Defendant's People and Organization Department, which is Defendant's term for its Human Resources Department. During that conversation, Plaintiff again requested to review the dog's vaccination record. Delos promised to send the vaccination records to Plaintiff, but did not do so.

32.    On January 22, 2024, at 6:52 p.m., Plaintiff emailed Sindia Tuttle, People & Organization Business Partner for the Northwest Region, and copied the email to Traci Delos, Field Director over the Oregon market. Plaintiff wrote: "I am addressing several issues/concerns shared with me earlier today. . . . If my memory is correct, I was told that this specific situation happened on/near December 15, 2023, at which point I'd like to highlight that I do not feel that I can appropriately and adequately explain the situation or myself, as that was almost 6 weeks ago. As a woman in my final trimester of a difficult pregnancy, I do not have a clear recollection of all the events that took place around that time. That being the case, I do not recall administering a Rabies vaccination to this patient, nor can I say that I have knowingly falsified a medical record at that time or on any other occasion. . . . "

33.    On January 23, 2024, at 2:55 p.m., Plaintiff received a message on a texting thread that included all Practice Managers in the Oregon market and Traci Delos, Field Director of the Oregon market, from Amanda Smith, Practice Manager in Wilsonville. Smith wrote, "Is anyone else experiencing problems with Veterinary Technician/Veterinary Assistant and Client Service Coordinator names staying for the notes? It is erasing the names of the Veterinary Assistant/Veterinary Technician and Client Service Coordinator in our medical notes."

34.    On January 25, 2024, at 8:54 a.m., Plaintiff received a phone call from Traci

COMPLAINT AND DEMAND FOR JURY TRIAL

**Snyder, Post and Burgess**
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 | Fax (503) 241-2249

Delos, Field Director of the Oregon market. Ms. Delos said she was terminating Plaintiff's employment due to "misconduct." Ms. Delos said she was unable to provide any reasoning for the decision. Delos did not claim she was terminating Plaintiff for animal abuse, administering a Rabies vaccination without a license, and falsifying a medical record as a Doctor of Veterinary Medicine.

35.     Plaintiff later learned from hospital staff that Jenifer Carter was the staff member who had made these claims against Plaintiff and that Carter was unhappy with Plaintiff for following Delos' directive to minimize workers' hours and for not promoting her to the Shift Lead position.

## FIRST CLAIM FOR RELIEF

### (OFLA – ORS 659A.150 et. seq.)

36.     Plaintiff re-alleges all the above relevant paragraphs as though fully set forth herein.

37.     Plaintiff sought to take medical leave protected by the Oregon Family Leave Act (OFLA).

38.     Defendant employed 25 or more persons in the State of Oregon for each working day during each of 20 or more calendar workweeks in the years before Plaintiff was intending to take leave.

39.     Defendant employed 25 or more persons in the State of Oregon for each working day during each of 20 or more calendar workweeks in the year Plaintiff was intending to take leave.

COMPLAINT AND DEMAND FOR JURY TRIAL

40.    Immediately prior to the planned commencement of family leave, Plaintiff worked for the Defendant for more than 180 days.

41.    Plaintiff worked an average of more than 25 hours per week for Defendant during the 180 days immediately preceding the date she was to commence leave.

42.    At all material times, Plaintiff had a serious health condition as that term is defined in ORS 659A.150(6).

43.    Defendant interfered, discriminated, and retaliated against Plaintiff for taking family and medical leave by taking adverse employment actions against her, including, but not limited to, terminating her employment.

44.    As a result of Defendant's interference, discrimination, and retaliation against her, Plaintiff suffered and continues to suffer economic losses.

45.    As a result of Defendant's discrimination and retaliation against her, Plaintiff is entitled to equitable relief and back pay.

46.    The Court should enter an order declaring that Defendant violated the OFLA.

47.    To the extent any amount awarded to Plaintiff is for damages occurring prior to the entry of judgment, she is entitled to an award of pre-judgment interest at the legal rate from the date the damage occurred until the date of judgment.

48.    Pursuant to ORS 659A.885(1) and ORS 20.107, Plaintiff is entitled to recover her reasonable attorneys' fees and costs, including expert witness fees.

49.    Plaintiff is entitled to post-judgment interest on all damages, costs, expenses, and fees from the date of judgment until the date paid.

COMPLAINT AND DEMAND FOR JURY TRIAL

# SECOND CLAIM FOR RELIEF

## (Title VII Civil Rights Act of 1964)

## (Gender Discrimination – 42 U.S.C. §2000e-2)

50.     Plaintiff alleges all prior relevant paragraphs as if fully set forth herein.

51.     At all material times, Defendant was an employer within the meaning of 42 U.S.C. § 2000e (b).

52.     Defendant discriminated against Plaintiff with respect to the terms and conditions of her employment, including compensation, because of Plaintiff's gender as alleged above.

53.     As a result of Defendant's unlawful employment actions, Plaintiff suffered and continues to suffer economic and noneconomic damages in an amount to be proved at trial.

54.     Plaintiff is entitled to an award for past lost wages and benefits, future lost earnings, benefits, and lost earning capacity, and other compensatory damages for future pecuniary losses. Plaintiff's economic damages are continuing in nature and are not presently known.

55.     Plaintiff is entitled to an award for noneconomic damages for her emotional distress.

56.     To the extent any amount awarded to Plaintiff is for damages occurring before the entry of judgment, Plaintiff is entitled to an award of pre-judgment interest at the legal rate from the date the damage occurred until the date of judgment.

57.     Plaintiff is entitled to post-judgment interest on all damages, costs, and attorneys' fees from the date of judgment until the date paid.

COMPLAINT AND DEMAND FOR JURY TRIAL

58.     Pursuant to 42 U.S.C. § 2000e-5, Plaintiff is entitled to an award of attorneys' fees, expert witness fees, and costs incurred herein.

59.     Plaintiff also seeks an award for such additional relief as justice may require.

## THIRD CLAIM FOR RELIEF

(Unlawful Employment Practices – ORS 659A.030(1)(b)(f))

60.     Plaintiff re-alleges Plaintiff's all prior relevant paragraphs as if fully set forth herein.

61.     Defendant discriminated against Plaintiff in the terms and conditions of her employment based on her gender by terminating her employment.

62.     As a result of Defendant's discriminatory conduct, Plaintiff is entitled to economic damages for back pay and front pay, plus pre-judgment interest.

63.     As a further result of Defendant's discriminatory conduct, Plaintiff suffered from humiliation, emotional distress, and loss of enjoyment of life for which she is entitled to be compensated at an amount set by the jury.

64.     Pursuant to ORS 659A.885, Plaintiff is entitled to recover her reasonable attorney fees, costs, and expert fees.

## FOURTH CLAIM FOR RELIEF

(Title I of the Americans with Disabilities Act – Discrimination)

65.     Plaintiff re-alleges all prior relevant paragraphs as if fully set forth herein.

66.     At all times material, Defendant was an employer for the purpose of, and subject to, the Americans with Disabilities Act (ADA).

COMPLAINT AND DEMAND FOR JURY TRIAL

67.     At all times material, Plaintiff was a pregnant female, and therefore had an impairment which substantially limits one or more major life activities, had a history and/or record of such impairment, and/or was regarded by Defendant as having such impairment.

68.     After Plaintiff disclosed her disabilities to Defendant, Defendant began to discriminate against Plaintiff as alleged above. Said discrimination was based on Defendant's failure to accommodate Plaintiff, disparate treatment, and retaliation reasonably.

69.     Defendant failed to engage in the interactive process with Plaintiff.

70.     Plaintiff requested reasonable accommodations from Defendant, which was to allow time away for medical appointments, physical ailments, and return to focusing on primary managerial duties.

71.     At all relevant times, Plaintiff could perform the essential functions of Plaintiff's position, with reasonable accommodation.

72.     Defendant's conduct violated 42 U.S.C. § 12112.

73.     As a result, Plaintiff suffered damages and is entitled to these damages and other relief set forth below.

74.     Plaintiff is entitled to equitable relief, including, but not limited to, a declaration that Defendant violated Plaintiff's statutory rights, reinstatement, and an injunction prohibiting further discrimination and retaliation.

75.     Plaintiff is entitled to an award for past lost wages and benefits and future lost earnings, benefits, and lost earning capacity, and other compensatory damages for past and future pecuniary losses. Plaintiff should be awarded economic damages in an amount determined to be fair by a jury.

COMPLAINT AND DEMAND FOR JURY TRIAL

76.     Plaintiff is entitled to noneconomic damages sufficient to compensate Plaintiff for emotional distress and other nonpecuniary losses in an amount to be proved at trial. Plaintiff should be awarded noneconomic damages in an amount determined to be fair by a jury.

77.     Plaintiff should be awarded nominal damages.

78.     The Court should enter an order declaring that Defendant violated the ADA.

79.     To the extent any amount awarded to Plaintiff is for damages occurring before the entry of judgment, Plaintiff is entitled to an award of pre-judgment interest at the legal rate from the date the damage occurred until the date of judgment.

80.     Pursuant to 42 U.S.C. § 12205, Plaintiff is entitled to an award of attorneys' fees, expert witness fees, and costs incurred herein.

81.     Plaintiff is entitled to post-judgment interest on all damages, costs, expenses, and fees from the date of judgment until the date paid.

## FIFTH CLAIM FOR RELIEF

(ORS 659A.103 et seq. – Oregon Disability Discrimination)

82.     Plaintiff re-alleges all relevant paragraphs.

83.     At all times material, Plaintiff was a 'disabled person' as defined at ORS 659A.104(1).

84.     Defendant is an 'employer' as defined at ORS 659A.106.

85.     After Plaintiff disclosed Plaintiff's disabilities to Defendant, Defendant began to discriminate against Plaintiff as alleged above. Said discrimination was based on Defendant's failure to reasonably accommodate Plaintiff, disparate treatment, retaliation, and a hostile work environment.

COMPLAINT AND DEMAND FOR JURY TRIAL

86.     Defendant failed to engage in the interactive process with Plaintiff.

87.     Plaintiff could perform the essential functions of Plaintiff's job with Defendant with or without the reasonable accommodations of allowing Plaintiff to continue to work.

88.     Defendant's termination of Plaintiff constitutes discrimination against Plaintiff due to Plaintiff's disabilities pursuant to ORS 659A.103 et seq.

89.     As a result, Plaintiff suffered damage and is entitled to the damages and other relief set forth below.

90.     Plaintiff is entitled to equitable relief, including, but not limited to, a declaration that Defendant violated Plaintiff's statutory rights, reinstatement, and an injunction prohibiting further discrimination and retaliation.

91.     Plaintiff is entitled to an award for past lost wages and benefits and future lost earnings, benefits, lost earning capacity, and other compensatory damages for past and future pecuniary losses. Plaintiff should be awarded economic damages in an amount determined to be fair by a jury.

92.     Plaintiff is entitled to noneconomic damages sufficient to compensate Plaintiff for emotional distress and other nonpecuniary losses in an amount to be proved at trial. Plaintiff should be awarded noneconomic damages in an amount determined to be fair by a jury.

93.     The Court should enter an order declaring that Defendant violated the Oregon Rehabilitation Act.

94.     To the extent any amount awarded to Plaintiff is for damages occurring before the entry of judgment, Plaintiff is entitled to an award of pre-judgment interest at the legal rate from the date the damage occurred until the date of judgment.

COMPLAINT AND DEMAND FOR JURY TRIAL

95.     Pursuant to ORS Chapter 659A and ORS 20.107, Plaintiff is entitled to recover Plaintiff's reasonable attorneys' fees and costs, including expert witness fees.

96.     Plaintiff is entitled to post-judgment interest on all damages, costs, expenses, and fees from the date of judgment until the date paid.

Dated: September 12, 2025

**Snyder, Post and Burgess**

*/s/ Daniel Snyder*
Daniel Snyder, OSB No. 783856
dansnyder@lawofficeofdanielsnyder.com
Paul Bastian, OSB No. 062706
paul@lawofficeofdanielsnyder.com
Tel: (503) 241-3617 / Fax: (503) 241-2249
Attorneys for Plaintiff

COMPLAINT AND DEMAND FOR JURY TRIAL